[Civ. No. 7071.   Fourth Dist.   Apr. 18, 1963.]

EVAN R. GAUT et al., Plaintiffs and Respondents, v.
ETHEL FARMER, Defendant and Appellant.

Hyer & Graeber and Charles C. Graeber for Defendant and Appellant.

Novack & Novack for Plaintiffs and Respondents.

GRIFFIN, P. J.—Plaintiffs, cross-defendants and respondents Evan R. Gaut and wife and Donald Lewis and wife

(hereinafter.called plaintiffs) brought this action to obtain an injunction restraining the defendant, cross-complainant and appellant Ethel Farmer (hereinafter called defendant) from interfering with their use of a roadway across defendant's land. Plaintiffs claimed that they had a prescriptive right to use the roadway and that they had an easement for roadway purposes across defendant's land by way of necessity. The trial court found that there was no way of necessity, since there were other but less convenient means by which the plaintiffs could reach their properties. The court then found that there was no evidence as to damages sustained by plaintiffs for blockading the road and denying plaintiffs the right to use the road, as claimed, and did not award them damages. Defendant cross-complained, seeking an injunction against plaintiffs for obstructing or diverting the natural course of waters draining across plaintiffs' land onto the land of defendant, and for damages. The court found and entered judgment against the cross-complainant (defendant) on this issue. There was no appeal by cross-complainant from this portion of the judgment.

The trial court ordered judgment for plaintiffs, decreeing that (1) there exists in favor of plaintiffs an easement by prescriptive right for purposes of ingress and egress to and from the properties owned by the plaintiffs; (2) the defendant should be enjoined from interfering with plaintiffs' easement; and (3) the defendant should remove the blockade over the roadway.

Basically, the trial court's judgment for plaintiffs rests upon the following two findings of fact: (1) that said dirt road encroaches upon the real property of said defendant; that said encroachment is approximately 30 feet in width and approximately 200 feet in length; that the northern boundary of said dirt road at the point at which it encroaches upon the said defendant's property is the south boundary of the real property owned by said plaintiffs; that the south boundary of the road is determined by reference to the northern edge of the drainage ditch as it was prior to the time it was cut and graded by said defendant; (2) that the plaintiffs have been using said dirt road for the purposes of getting to and from their real properties; that the preponderance of the evidence establishes that plaintiffs have used said road as it encroaches upon said defendant's property openly, notoriously, peacefully, adversely and continuously for a period of time in excess of five years.

The sole question on this appeal is whether or not these two findings of fact are supported by substantial evidence in the record.

The plaintiffs and respondents are the Gauts and the Lewises (who are the daughter and son-in-law of the Gauts). Together they own a 10-acre parcel 440 yards long and 110 yards wide. This parcel is bounded by the River Road on the west and the Colorado River on the east. Ethel Farmer is the defendant and appellant in this action and she owns a parcel which is similar in size and shape to that of the plaintiffs. The Farmer parcel is adjacent to and south of the plaintiffs' land. The roadway here involved extends from the River Road easterly along the north line of defendant's property for a distance of only 200 feet and thence north across the Gaut property to the Colorado River. South of this roadway there is a ditch which drains water in an easterly direction toward the river. Defendant's contentions are (1) that the Gauts' use of the road was not hostile or adverse (citing *Case* v. *Uridge,* 180 Cal.App.2d 1, 8 [4 Cal.Rptr. 85]); and (2) that the evidence does not support the trial court's finding that the roadway is approximately 30 feet wide.

█ The testimony as to the use of the roadway by plaintiffs over a period of more than five years and since 1952 is well established. Gaut testified that he had used the road continuously since 1952 at its present location. Lewis used it since 1956 and knew that Gaut had used it since 1952. One Ward R. Babcock, who lived on the property in a trailer court, said that he used the road during that period of time and knew that Gaut had used it for more than five years.

█ The principal question is the sufficiency of the evidence to support the finding that the strip over which plaintiffs were awarded an easement of right-of-way was approximately 30 feet wide and as limited by the finding. Lewis testified that the roadway, from the point where it left the River Road highway down to his house, was approximately 20 feet wide; that at that point it was about 12 feet wide, and defendant built a barricade across the roadway about 10 or 12 feet from his house, and beginning at his property line it extended south about 20 feet where the road was and that that was the width of the road ever since it was used. He stated that he knew that portions of this road were on defendant's property when he built his house there in 1957.

Evan Gaut testified that in 1954, when Mr. Freeman sold the property to Mrs. Farmer, the present road occupied a 30-foot

strip purchased by defendant from one Ray Seden in 1958 and that Seden had previously purchased it under a tax sale.

Defendant testified that she purchased the 30-foot strip between her property and the Lewis property in 1958; that in 1957 she saw excavating and digging being done on the property near the Lewis home and that she knew at that time that there was a road about 20 feet wide going over a portion of the 30-foot strip which she later purchased and she also said that she traveled over portions of it herself.

The evidence rather indicates that the traveled portion of the claimed easement was about 20 feet wide. The reason for the allowance by the trial court of the 10 extra feet is not clear, unless it is due to the peculiar condition of the terrain at that point. The southerly edge of the roadway breaks off quite suddenly and slopes into a gulch or drainage ditch 5 to 7 feet in depth where water flows at some time of the year from heavy rains or flash floods, and it might well appear that the extra 10 feet of the strip was essentially necessary, and had been used over the required period to prevent the remaining 20-foot strip of roadway from washing out.

Civil Code, section 806, provides:

"The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired."

This section also applies to title by prescription, and the nature of the enjoyment measures the extent of the rights under a prescriptive easement and precludes a subsequent alteration in or deviation from the place, mode or manner of its enjoyment. (*Ward* v. *City of Monrovia,* 16 Cal.2d 815 [108 P.2d 425].) The specification of width and location of surface rights-of-way does not always determine the extent of the burden imposed on the servient land. (*Pasadena* v. *California-Michigan etc. Co.,* 17 Cal.2d 576 [110 P.2d 983, 133 A.L.R. 1186].) See also *Ballard* v. *Titus,* 157 Cal. 673 [110 P. 118].

In support of this conclusion, the findings recite that the easement granted was approximately 30 feet in width and this distance was qualified by a further finding that:

"The South boundary of the road is determined by reference of the Northern edge of the drainage ditch as it was prior to the time it was cut and graded by said defendant."

Just where that point is is not clear from the finding, but there was some evidence on the subject and of course the width of the easement, which is well known to the parties,

would be regulated accordingly. The trial court had before it several maps, surveys, photographs, etc. Many of these exhibits showed the boundaries of the road and the gulch. We are unable to hold that there was no evidence to support the finding above indicated.

The only other point requiring consideration is the question whether plaintiffs used said road, as it encroaches upon defendant's property, ''openly, notoriously, peacefully and adversely'' for a period in excess of five years.

The questions whether the use of an easement is adverse and under a claim of right, or permissive and with the owner's consent, and the question whether the nature of the user is sufficient to put the owner on notice, are all questions of fact. If there is any substantial evidence to support the judgment, it must be affirmed. All conflicts must be resolved in favor of the prevailing party and the evidence viewed in the light most favorable to him. (*O'Banion* v. *Borba*, 32 Cal.2d 145, 147 [195 P.2d 10].)

As heretofore noted, several witnesses living on the Gaut property testified that the road was continuously used and was maintained by them beginning in 1952 as a means of access to their homes. This was sufficient to show continuous user. (*Weideman* v. *Staheli*, 88 Cal.App.2d 613 [199 P.2d 351].)

Whether the use of the road was adverse and under a claim of legal right or only a mere permissive use may be properly questioned. This question was one of the facts to be determined by the trial court from the facts and circumstances of the case. It should be here noted that the properties involved are located out on rough, rocky, unenclosed desert land near the Colorado River north of Needles, where survey stakes or lines, if any, are not too well established or visible.

Gaut originally owned all of the property and his means of access from the main road to his house was over this so-called wagon trail or road. He later sold a portion of it to his son-in-law (Lewis). Lewis built a home near the roadway here involved about where it leads off the main road. Defendant had knowledge of this roadway, as it existed, and its use, some time before she purchased her property adjoining it. There is no evidence that she ever objected to this use of that property until 1961 when a survey was made as to her north property line and she barricaded the roadway. There is testimony that Gaut, five or six years ago, erected a

visible sign at the entrance to this roadway reading, ''Gaut's Gulch,'' and it remained there that length of time undisturbed and without protest by defendant. One witness testified that, so far as he knew, Gaut used this road ''openly'' during that period. Defendant, in her testimony, referred to it as the ''Gaut Road.'' Both Gaut and Lewis testified that they had never asked nor received permission to use the road. Gaut testified that he had worked and improved the road over this period of time and used it openly and exercised rights over it as though it were his own, although he knew a part of it was on defendant's property. Lewis testified that he helped do upkeep work on it and traveled over it from 1952 until 1956 an average of three times a week, and from 1956 almost daily until the barricade was erected. Mr. Babcock used the road continuously during that period of time and he openly helped Gaut clean and repair the road by use of a ''drag.'' █ Acts of dominion inconsistent with permissive user serve as prima facie evidence of notice of a claim of right. (*LeDeit* v. *Ehlert*, 205 Cal.App.2d 154 [22 Cal. Rptr. 747].) █ The factual background and citation of authorities in *LeDeit* v. *Ehlert, supra,* are quite similar, and will support our conclusion that the evidence supports the finding on the subject of adverse possession. See also *Shonafelt* v. *Busath,* 66 Cal.App.2d 5, 13 [151 P.2d 873]; *Lord* v. *Sanchez,* 136 Cal.App.2d 704, 706 [289 P.2d 41]; and *Phillips* v. *Barton,* 207 Cal.App.2d 488, 492 [24 Cal.Rptr. 527].

Judgment and amended judgment affirmed.

Coughlin, J., and Brown (G.), J., concurred.