[No. A066177. First Dist., Div. Five. Aug. 8, 1995.]

JOHN E. SCRUBY et al., Plaintiffs and Appellants, v.
VINTAGE GRAPEVINE, INC., Defendant and Appellant.

## COUNSEL

Miller, Starr & Regalia, Lewis J. Soffer and Edmund Regalia for Plaintiffs and Appellants.

David C. Wignall, Cannata & Papale and Lawrence G. Papale for Defendant and Appellant.

## OPINION

KING, J.—In this case we hold that a deed granting a nonexclusive easement of a specified width does not, as a matter of law, give the owner of the dominant tenement the right to use every portion of the easement. The trial court properly interpreted this easement to give the owner of the servient tenement the right to place improvements upon the easement as long as they do not unreasonably interfere with the right of the owner of the dominant tenement to ingress and egress.

John E. and Giovanna Scruby (Scruby) brought this action for declaratory and injunctive relief to resolve a dispute with Vintage Grapevine, Inc. (Grapevine), the owner of the adjacent property, concerning a nonexclusive easement, 52 feet in width, dedicated to road and utility purposes over Grapevine's property. Scruby alleged certain aspects of Grapevine's winery operations unlawfully interfered with Scruby's right to fully use the easement. Grapevine cross-complained, alleging Scruby had unlawfully interfered with the winery's use of its property. The trial court issued a judgment after a nonjury trial defining the scope of the easement. Both parties appeal.

*Statement of Facts*

Scruby is the owner of 1.03 acres of land and a single-family home at 7429 St. Helena Highway in Napa County, California. Grapevine owns and operates Cosentino Winery located at 7415 St. Helena Highway, consisting of 4.29 acres just south of Scruby's property. The only access to Scruby's landlocked property is over an easement on Grapevine's property which was deeded to Scruby by Grapevine's predecessor in 1986. The recorded easement grant deed describes the property and states that Scruby is granted "[a]

nonexclusive easement, 52 feet in width, for road and utility purposes." The precise boundaries of the easement are set out in the deed by reference to a survey map and are generally described in this litigation as a 52-foot wide corridor from Highway 29 along the northern side of the winery property proceeding westward and ending in a cul-de-sac 100 feet in diameter.[1] By the grant of this easement, Scruby's land became the dominant tenement and the Grapevine property became the servient tenement. (Civ. Code, § 803.)

Scruby filed a complaint in September 1993, seeking to enjoin Grapevine from interfering with Scruby's easement by placing obstructions, such as water tanks and grapevines inside the described easement area. Scruby sought damages as well as injunctive relief to compel Grapevine to remove the tanks and grapevines from the easement area.

Grapevines' answer denied the allegations of Scruby's complaint. In its cross-complaint, Grapevine asked for an injunction restraining Scruby from interfering with the use of Grapevine's property. Among other acts, Grapevine alleged Scruby had paved a new accessway to his residence within the described easement area from Highway 29. The paving done by Scruby did not meet the design criteria approved by the county and by the California Department of Transportation for the winery. Consequently, Grapevine alleged it was threatened with the loss of its use permit for operation of the winery. Grapevine sought an injunction compelling Scruby to remove the new paving and for damages for destruction of Grapevine's property.

After hearing two days of evidence and touring the disputed easement area, the court entered judgment: (1) that Grapevine's use of the easement in its winery operations did not interfere with Scruby's rights because Scruby did not have the right to use the full width of the 52-foot easement and the 100-foot cul-de-sac but only that portion necessary for ingress and egress to their property; (2) that Grapevine is the fee owner of the property and can use it in any way normally used by the owners of real property as long as such use is not inconsistent with the easement granted to Scruby permitting

---

[1]Scruby has requested this court take judicial notice of several grant deeds evidencing the chain of title of this easement. These documents were not presented as evidence below; and for this reason alone, judicial notice can properly be denied. (*Coy* v. *County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1083, fn. 3 [1 Cal.Rptr.2d 215].) Moreover, *even if* these documents had been admitted below and properly considered on appeal, they would have had no bearing on the outcome of this case. In urging us to take judicial notice of these documents, Scruby argues that they serve "as additional evidence that the Scruby easement was specifically described, and [Grapevine] Winery was aware of this." This point was never disputed by Grapevine. A request for judicial notice is properly denied when the "documents were not presented to the trial court and are not relevant to any disputed issue on appeal . . . ." (*Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 653, fn. 3 [243 Cal.Rptr. 815].)

ingress and egress to their property; (3) that Scruby is not entitled to an injunction ordering Grapevine to remove the vines and water tanks within the easement area nor are they entitled to enjoin Grapevine's lawful use of the easement area as long as Grapevine does not interfere with Scruby's right of ingress and egress; (4) that Scruby, at their own expense, must remove the paving creating separate access to their property from Highway 29 so that Grapevine will remain in compliance with the plan approved by the governmental entities with oversight responsibility for the winery; (5) that Scruby has suffered no damages as a result of any acts or conduct of Grapevine; and finally, (6) that Grapevine must correct a water drainage problem which creates ponding on Scruby's side of the easement. Scruby appeals from the provisions numbered (1)-(5), and Grapevine cross-appeals from the provision numbered (6).

## THE MAIN APPEAL

### General Law of Easements

■ "An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership." (*Mesnick* v. *Caton* (1986) 183 Cal.App.3d 1248, 1261 [228 Cal.Rptr. 779].) ■ In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired. (*Wilson* v. *Abrams* (1969) 1 Cal.App.3d 1030 [82 Cal.Rptr. 272]; *County of Sacramento* v. *Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 313 [238 Cal.Rptr. 305].) If the language is ambiguous, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible. (*Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226].)

■ The owner of the dominant tenement must use his or her easements and rights in such a way as to impose as slight a burden as possible on the servient tenement. (*Locklin* v. *City of Lafayette* (1994) 7 Cal.4th 327, 356, fn. 17 [27 Cal.Rptr.2d 613, 867 P.2d 724].) Every incident of ownership not inconsistent with the easement and the enjoyment of the same is reserved to the owner of the servient estate. (*Golden West Baseball Co.* v. *City of Anaheim* (1994) 25 Cal.App.4th 11, 35 [31 Cal.Rptr.2d 378]; *City of Los Angeles* v. *Ingersoll-Rand Co.* (1976) 57 Cal.App.3d 889, 893-894 [129 Cal.Rptr. 485].)

The owner of the servient estate may make continued use of the area the easement covers so long as the use does not "interfere unreasonably"

with the easement's purpose. (*Camp Meeker Water System, Inc.* v. *Public Utilities Com.* (1990) 51 Cal.3d 845, 867 [274 Cal.Rptr. 678, 799 P.2d 758]; *Raab* v. *Casper* (1975) 51 Cal.App.3d 866, 876 [124 Cal.Rptr. 590].) ■ Whether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on appeal. (*Pacific Gas & Elec. Co.* v. *Hacienda Mobile Home Park* (1975) 45 Cal.App.3d 519, 528 [119 Cal.Rptr. 559], and cases cited therein.)

■ The conveyance of an easement limited to roadway use grants a right of ingress and egress and a right of unobstructed passage to the holder of the easement. A roadway easement does not include the right to use the easement for any other purpose. (See *Marlin* v. *Robinson* (1932) 123 Cal.App. 373, 377 [11 P.2d 70].) When the easement is "nonexclusive" the common users "have to accommodate each other." (*Applegate* v. *Ota* (1983) 146 Cal.App.3d 702, 712 [194 Cal.Rptr. 331].) An obstruction which unreasonably interferes with the use of a roadway easement can be ordered removed "for the protection and preservation" of the easement. (*Id.* at pp. 712-713.)

While the parties are in agreement on the controlling principles of law, their dispute is with how the trial court applied these principles to the facts at hand.

*Scope of the Easement Grant*

Scruby's principal argument, which serves as a springboard for their remaining arguments, is that the court erred in construing the easement to give them a mere roadway of reasonable and convenient access to their residence and that the correct interpretation would have allowed them the right to exclusive use of the entire specifically described easement area. Scruby emphasizes the grant gives them "[a] nonexclusive easement, 52 feet in width, for road and utility purposes." Therefore, Scruby argues, they have "the *right, as a matter of law*, to use every portion of their 52-foot-wide easement, and the 100-foot diameter cul-de-sac, free of interference by [Grapevine]." (Italics in original.) Grapevine does not deny that Scruby has "the right to use the easement to come and go from their property unimpeded," but Grapevine contends that Scruby has "not been granted the right to use discrete 'portions of their easement' which do not relate to the efficient ingress and egress to and from their own property."

From the evidence presented and the court's tour of the premises, the court agreed with Grapevine that the extent of Scruby's right to use Grapevine's land was limited to an easement of ingress and egress to and from the

property. The court further found that Grapevine had not used its property in any fashion or in any way which had restricted Scruby's access over the easement to their parcel of land. ■ As the court adjudged the subsidiary issues in this case in unison with these views, this case is reduced to a question of whether the trial court's interpretation of the scope of this easement is supported by the language of the instrument, the evidence in this record, and the intent of the original drafters of the easement grant. (*Warren v. Atchison, T. & S. F. Ry. Co.* (1971) 19 Cal.App.3d 24, 35 [96 Cal.Rptr. 317] [interpretation of scope of easement mixed question of fact and law].)

*Admission of Extrinsic Evidence*

A great deal of extrinsic evidence about the original creation of the boundaries of this easement was admitted here without objection. Scruby now objects to the extrinsic evidence, asserting that the intent of the parties is evident from a mere examination of the unambiguous language of the instrument, and the terms of the instrument govern. Scruby maintains that an objection at trial was unnecessary because as a substantive rule of law, extrinsic evidence cannot be used to support a meaning to which the easement grant is not reasonably susceptible. (See *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 23 [92 Cal.Rptr. 704, 480 P.2d 320].) Thus, we will consider whether the extrinsic evidence supports a reasonable interpretation of the easement.

As Scruby emphasizes, when the width of an easement is definitely fixed by the grant or reservation creating the same, its use may be interpreted as commensurate with the entire width thereof. (See, e.g., *Ballard* v. *Titus* (1910) 157 Cal. 673, 681 [110 P. 118]; *Tarr* v. *Watkins* (1960) 180 Cal.App.2d 362, 366 [4 Cal.Rptr. 293].) It is equally well settled, however, that "[t]he specification of width and location of surface rights-of-way does not always determine the extent of the burden imposed on the servient land. . . ." (*Gaut* v. *Farmer* (1963) 215 Cal.App.2d 278, 282 [30 Cal.Rptr. 94], citations omitted.)

This point is aptly illustrated in *Heath* v. *Kettenhofen* (1965) 236 Cal.App.2d 197 [45 Cal.Rptr. 778], a case brought to our attention at oral argument which has been supplementally briefed by the parties. That case involved the proper interpretation of an easement almost identical to the one at issue here. Plaintiffs in *Heath* were granted an easement described as 40 feet in width for roadway and utility purposes. (*Id.* at p. 200.) Notwithstanding the specifically described easement area, the trial court interpreted this language as granting plaintiffs the right to reasonable use of the easement for access to and from their property. The court further held that defendant, the

owner of the servient tenement, was entitled to use portions of the described easement area for uses such as parking vehicles, so long as those uses did not unreasonably interfere with plaintiffs' use. Plaintiffs appealed, contending they had the "an absolute right to use the easement to the full extent of its width, free of any interference by the owner of the servient estate." (*Id.* at p. 204.)

The appellate court in *Heath* rejected this argument and upheld the trial court's interpretation. In doing so, the court noted that the precise specification of width and location of an easement does not always determine the extent of the burden placed upon the servient tenement; rather, that burden can properly be measured by the use and purpose for which the easement has been granted. (236 Cal.App.2d at p. 204.) Furthermore, whether encroachments in the easement area constituted an unreasonable interference with plaintiff's use presented "a question of fact, to be resolved in the first instance by the trial court, whose determination is to be upheld on appeal if supported by substantial evidence." (*Id.* at p. 205.)

When there is any ambiguity or uncertainty about the scope of an easement grant, the surrounding circumstances, including the physical conditions and character of the servient tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent. (See *Buehler* v. *Oregon-Washington Plywood Corp., supra,* 17 Cal.3d at p. 528.) We cannot say there is no ambiguity on the face of the easement grant here concerning the matter of the physical area over which Scruby has roadway use. The language of the easement does not specifically describe the intended roadway as 52 feet in width ending in a 100-foot cul-de-sac. Instead, it provides a "nonexclusive easement, 52 feet in width, for road and utility purposes." This kind of ambiguity is frequently found, and the pertinent rule is accurately stated in 28 California Jurisprudence Third, Easements and Licenses, section 58, page 200 "[i]n determining the scope of an easement, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible." (See also Annot. (1953) 28 A.L.R.2d 253, 265.)

Resort to surrounding circumstances leaves no doubt in our minds, as it left no doubt for the trial court, that the easement before us can be reasonably construed as granting Scruby the right of ingress and egress to the property. The court's opinion provides a full history of this easement and notes: "The court finds that the initial grant of easement in 1966 was made in connection with a planned subdivision of the lands to which the easement was to provide access. Because these lands were never subdivided according to plan, the easement remained in place to service Parcel A [Scruby's

property], but its dimensions were far greater than those contemplated or necessary for access to a single parcel, and were indeed far greater than that actually employed by the dominant tenement over the history of its use." Where the court's "construction appears to be consistent with the true intent of the parties an appellate court will not substitute another although it may seem equally tenable." (*Moakley* v. *Los Angeles Pacific Ry. Co.* (1934) 139 Cal.App. 421, 426 [34 P.2d 218].)[2]

*Removing Obstructions in the Easement Area*

Scruby argues that the trial court erred in denying their request for an injunction prohibiting Grapevine from interfering with the use of their easement. They argue that Grapevine has encroached on their easement by using it for agricultural equipment, planting of grapevines, and other winery-related uses.

It is clear that under the trial court's fully supported interpretation of the scope of this easement, Scruby has *not* been granted the right to exclusive use of each and every square inch of the easement area. Rather, Grapevine may make continued use of the easement area although it may not do anything that unreasonably interferes with Scruby having access to their property.

So defined, the evidence on this point supported the trial court's conclusion that Scruby has "in no way been blocked or prevented from using the easement for ingress and egress to and from" their property. The record reflects that Scruby actually used a 15-foot wide area of the easement for reasonable ingress and egress to their property. Scruby admitted that the grapevines and water tanks within the boundary of the 100-foot cul-de-sac did not block their access to their property. Consequently, the court's finding that Grapevine's use of the easement area had not unreasonably interfered with Scruby's right of ingress and egress was fully supported by substantial evidence and is binding on appeal. (*Pacific Gas & Elec. Co.* v. *Hacienda Mobile Home Park, supra,* 45 Cal.App.3d at p. 528.)

*Paving the Roadway*

■ Our next consideration is the court's adjudication that Scruby must remove the paved roadway. Once again, there is no difficulty as to the controlling principles of law—the problem is with their application. The

[2]No pro tanto extinguishment of the granted easement results from this decision which determines the Grapevine's current use of a portion of the easement does not interfere with Scruby's right of ingress and egress to their property as presently developed.

owner of a dominant estate may do that which is reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use. (*Colvin* v. *Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1312 [240 Cal.Rptr. 142].) But the easement may not be substantially altered without the consent of the owner of the servient estate. (*People* ex rel. *Dept. Pub. Wks.* v. *Younger* (1970) 5 Cal.App.3d 575, 582 [86 Cal.Rptr. 237].) The trial court found that Scruby's "paving of the roadway at the entrance to the easement was not incident to the reasonable repair and maintenance of the easement" but rather "the paving constituted an undue burden on the servient tenement."

Substantial evidence supports the trial court's findings in that regard. The record demonstrates that due to "a myriad of safety questions and concerns" Napa County had issued Grapevine a use permit with the condition that there would be a single entrance from Highway 29 onto Grapevine's property to be used by both Scruby and the winery. The approved plan called for moving the entrance of the driveway several feet south along Highway 29. This slight reconfiguration allowed for a proper turning radius from Highway 29 to the winery property. As reconfigured, the entrance from the highway was still within the 52-foot easement area.

Scruby was provided the opportunity to object to the plan, but they did not. Thereafter, Scruby paved a separate portion of the easement leading from their property to the highway. The paving opened up two roads from Highway 29, in violation of Grapevine's use permit. Grapevine had been notified to remove the paving or lose the winery's use permit.

Upon viewing the scene, the court found "that for safety reasons a single entrance to the winery property is essential." This finding was supported by expert testimony at trial detailing the safety hazards presented when two driveways, ten feet apart, access the same busy highway. The court further found that a single entrance was not an impediment to Scruby's right to a reasonable mode of ingress and egress to their property. The court's findings are fully supported and binding on appeal.

GRAPEVINE'S CROSS-APPEAL

*Resolving the Drainage Problem and Landscaping*

In its cross-appeal, Grapevine argues it should be relieved of that portion of the judgment setting out specific requirements for its construction of a drainage system and modification of the landscaping, and instead, Grapevine should be given flexibility to resolve the drainage problem and respond to

future conditions at the site in the most efficient manner possible. The trial court heard ample evidence regarding the drainage problem along the north side of the easement corridor, and its judgment contains detailed requirements on how this problem should be resolved.[3] The court also made detailed findings prohibiting Grapevine from interfering with certain landscaping in the easement area. These findings were not objected to below; nevertheless, Grapevine requests that these portions of the court's judgment should be reversed.

We are not inclined to reweigh the evidence and make new findings in this regard. If, as Grapevine claims, this portion of the court's judgment is unduly burdensome, then proof to that effect can be made in the trial court if subsequent proceedings are necessary. "We must assume reasonable action of the trial court in the future in determining whether its decree has in fact been violated." (*Reclamation Dist. 1500* v. *Sutter Basin* (1953) 121 Cal.App.2d 537, 546 [263 P.2d 348].)

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied September 6, 1995, and the petition of plaintiffs and appellants for review by the Supreme Court was denied November 16, 1995.

---

[3]The court's judgment contains precise specifications for resolving the drainage problem. For example, the judgment requires Grapevine to design and construct "a catch basin of sufficient capacity to carry away water that drains and ponds on the north side of the fence dividing the easement." This drainage system is to be "installed at the eastern end of the fence at the point where a pipe is installed under the access driveway to the Scruby parcel." Furthermore, "the drainage culvert running down the center of the easement shall be designed and installed so as to remain on the south side of the fence which divides the easement, commencing at least at the point of the rear terminus of the fence."